IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW JAMES GRIFFIN,

       **Plaintiff,**

vs.                                      **No. 04cv654 MCA/WDS**

ROBERT J. PERRY, et al.

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Matthew James Griffin's *Eighth Objection and Notice of Inability to Fully Comply with Order (doc. 178)*, filed June 17, 2010 [Doc. 190]; and on his *Ninth Objection and Motion to Vacate Order (doc. 178)*, filed June 21, 2010 [Doc. 191]. Plaintiff appears *pro se.* The Defendants have not responded to Griffin's objections or motion, perhaps because they are directed to the Court's order that Griffin show cause why portions of his Complaint should not be dismissed. Having reviewed Griffin's written submissions, the record, and the relevant law, and being fully advised in the premises, the Court **denies** his objections and motion.

## I. Eighth Objections.

### A. Witness list

In the Court's March 25, 2010 Order, the Court ordered Griffin to

prepare a detailed summary of the testimony he intends to elicit from inmate or other witnesses listed in his portion of the proposed pre-trial order (except for those witnesses who also have been listed by the Defendants), explaining who the witnesses are and why their testimony is relevant.

Doc. 178 at 15. Griffin complains that he is unable to fully respond to the Court's Order because "many of his case files were damaged, lost or destroyed" by California prison officials between July

and October 2009.  Doc. 190 at 1.  Although the exhibits attached to his Objections indicate that over 10,000 pages of legal documents were returned to him[1], see id. at 31, Griffin states that his pretrial-order witness file is missing; that witness addresses were lost or destroyed; and that he is not allowed to communicate with other prisoners.   See id. at 2-3.  At the hearing held on March 17, 2011, the Court ascertained from Griffin (who appeared telephonically) that he now has a copy of his pretrial report in which he listed the witnesses, but he still has not submitted the detailed summary that the Court ordered him to submit.  Because he has failed to comply with the Court's Order to more fully summarize the witnesses' expected testimony, the Court will make preliminary rulings on who Griffin may call based on the limited descriptions Griffin has given.

The Court has reviewed Griffin's preliminary list of witnesses and their expected testimony regarding his remaining Eighth-Amendment claim.  *See* Doc. 161 at 17-20.  The first group of witnesses apparently were other New Mexico inmates:

> Todisco, Anthony.  Will testify regarding Plaintiff's injuries, his experiences with the Defendants and assaults committed upon restrained inmates at the Penitentiary.
> Reynolds, Randall. Will testify regarding Plaintiffs injuries and Plaintiffs reporting of these injuries.
> Blanco, Kevin. Will testify regarding his experiences with the Defendants and his experiences with the Defendants that relate to the Complaint.
> Price, John. Will testify regarding Plaintiffs injuries and his experiences with the Defendants.
> Garcia, Alfonso. Will testify regarding assaults of restrained prisoners at the Penitentiary.
> Steel, Alejandro. Will testify regarding assaults of restrained prisoners at the Penitentiary.
> McGuire, Travis. Will testify regarding Plaintiffs injuries.
> Begay, Marty. Will testify regarding Plaintiffs physical injuries relating to August 15, 2001.
> Padilla, Joseph. Will testify regarding use of force on restrained prisoners at the Penitentiary.

---

[1]  Griffin also complains that officials took all of his legal documents out of their bindings and organized files and mixed them up so that they are now totally disorganized and that it would require hundreds of hours to put them back in a usable order.

Perkins, Herbert. Will testify regarding use of force on restrained prisoners at the Penitentiary.
Dutchover, Benjamin. Will testify regarding assaults of restrained prisoners at the Penitentiary.
Gonzales, Shawn. Will testify regarding assaults of restrained prisoners at the Penitentiary.
Cordova, Andrew. Will testify regarding assaults of restrained prisoners
McGhee, William. Will testify regarding assaults on restrained prisoners
Saaveda, Joseph. Will testify regarding assaults on restrained prisoners
Archuleta, Michael. Will testify on assaults of restrained prisoners at the Penitentiary.
Guzman, Michael. Will testify regarding assaults on restrained prisoners

It appears that none of these inmates were present during the August 15, 2001 events. Further, alleged assaults on other restrained prisoners by personnel *other* than the officers who allegedly abused Griffin are irrelevant. Defendant Kitchens has submitted under seal records regarding prisoners who had an injury in which Kitchens was involved as an officer present, and Kitchens was not accused of causing any injury in any of the records. *See* Doc. 181. If Griffin alleges that any of his potential inmate-witnesses were battered while in restraints by one of the named Defendants, he shall indicate who that is and the Court may reconsider its ruling.

There are photographs[2] and medical reports describing Griffin's condition after the August 15, 2001 incident in detail, and Griffin will be calling the medical personnel who examined him. Griffin was placed in segregation and not in a cell with other prisoners after the August 15, 2001 incident. Unless Griffin can explain what relevant evidence other inmates could testify to regarding the August 15 events and his injuries, the Court will not allow Griffin to call any inmates as witnesses.

---

[2] The Court ordered the Defendants to re-produce the photographs, video, and DVD of Griffin's injuries and the August 15, 2001 incident to Griffin because he stated at the March 17, 2011 hearing that the California prison had destroyed them in a prisoner-property "cutdown" effort without notifying him before the records were destroyed.

3

Griffin names five witnesses who apparently are or were employed at the penitentiary or by the state, but his description of their testimony is extremely vague:

Austin, Kathleen. Will testify regarding her observations on August 15, 2001.
Boardrick, Sharon. Will testify regarding her observations on August 15, 2001.
Marrero, Domingo. Will testify regarding his experiences at the Penitentiary and the events of August 15, 2001.
Garcia, Shirley. Will testify regarding tests conducted at the State Crime Labs in relation to the events of August 15, 2001
Purcell, Noreen F. Will testify regarding tests conducted at the State Crime Lab in relation to the events of August 15, 2001.

Nothing in Griffin's filings indicates what these witnesses' jobs are or why tests at the crime lab are relevant to Griffin's Eighth-Amendment claims.  The Court will not allow him to call them as witnesses.

Griffin seeks to call William O. Edward, M.D. to "testify regarding his past treatment of Plaintiff in 1975."  Because Griffin has submitted much more recent medical records regarding the condition of his eyes before the incident and may call the ophthalmologist who examined him both before and after the incident, and because Dr. Edward's examination occurred more than 30 years ago, the Court will not allow Griffin to call him as a witness.  Griffin also seeks to call Christine Martinez to "testify regarding the authentication of Plaintiffs medical and ophthalmologic records."  The Court instructs the Defendants to examine the records and to stipulate to their authenticity unless there appear to be serious objections.

The following individuals appear to be the only valid witnesses who may have personal and relevant information about Griffin's Eighth-Amendment claims:

Goffe, Jerry G. Will testify regarding creating photographs form [sic] a video.
Chavez, Edward. Will testify regarding his experiences at the Penitentiary and observations on August 15, 2001.
Doss, Angie. Will testify regarding her experiences as the Penitentiary *Investigator and regarding the use of force investigation in this case.
Fire, Maureen. Will testify regarding Plaintiff's treatment and injuries of August 2001.

4

Penn, Sandra F. Will testify regarding Plaintiffs PNM Medical Record, medical reporting requirements as the Penitentiary, medical operating procedures and her actions and observations on August 15, 2001.

Garcia, Ronald. Will testify about events relating to his investigation of August 15, 2001.

Leyba, Maria. Will testify regarding the medical treatment of Plaintiff on August 15, 2001 and her other observations.

Lujan, Johnny. Will testify regarding his work assignment with Defendant Kitchens at the Front Entrance on August 15, 2001.

Durso, M.D., Frank. Will testify regarding the injury of Plaintiffs eye, the eye condition and available treatments.

Magnas, M.D., David B. Will testify regarding past eye exams of Plaintiff and Plaintiffs ophthalmology records at the prison.

The Court will limit Griffin's final witness list to these individuals, and on a proper request to amend the witness list, to Griffin's most recent ophthalmologist.

**B. Copy of deposition.**

Griffin also complains that the Defendants never gave him an opportunity to review, sign, and copy Volume I of his July 2008[3] deposition transcript as provided by Judge Schneider's order in Doc. 103 and Griffin's motion in Doc. 83. *See* Doc. 190 at 3-4. Because the Court's proposed dismissal of the First-Amendment claims is a *sua sponte* dismissal for failure to state a cognizable claim, Griffin may supply further factual allegations based on his personal knowledge - he does not have to cite to his deposition. The Court will consider the statements that Griffin alleges in Doc. 191 are in Volume I of the deposition regarding the due-process claim. The Court notes that Griffin states he was able to obtain some documents that were responsive to the March 25, 2010 Order, *see* Doc, 188, and he has filed a response. *See* Doc. 191. Further, at the March 17, 2011 hearing, Griffin states that the Defendants have now supplied the deposition to him.

---

[3] Because Volume II of Griffin's deposition was taken in July 2007, the Court believes that Volume I was also taken in July 2007, not 2008.

## II.  Ninth Objections and Motion to Vacate.

### A.  The due-process claim.

Griffin first complains, in regard to summary judgment in favor of Defendants on Griffin's due-process claim, that the Court relied on facts that either are not in the record or are in "contravention of the facts in the record."  Doc. 191 at 2.  Two facts that he contends the Court got wrong were the *date* a state-issued television was given to him and the "mis-appli[cation] of the word program or programming to a television set." *Id.* at 2, 5.  The March 25, 2010 Order states that Griffin "was issued a state-provided television on June 25, 2001," Doc. 178 at 3, and the Court based this fact in part on Griffin's June 25, 2001 grievance stating that "unit staff are denying me programing because I refuse to enter into a financial contract relating to a television that I did not request and that belongs to the state," and requesting "programing . . . in the same manner that you would an indigent who has broken his TV and could not afford restitution," Doc. 58, Ex. 1.  Griffin contends that the television was not actually placed into his cell until July 6, 2001 and that the word "program" meant the prisoner's activities, including education, that are "brought to the prisoner via the television set."  Doc. 191 at 5.  Assuming that Griffin is correct about both matters, the difference between the date the television was "issued" and the date it was placed in his cell is not material to the Court's conclusion that the Defendants are entitled to summary judgment on Griffin's due-process claim that he was entitled to a pre-deprivation disciplinary hearing before the prison took money from his prison account to pay for the television that he destroyed on July 6, 2001.

Griffin does not challenge the specific finding that he "destroyed his state-issued television by throwing it against his cell door because he was angry that his sunglasses had been taken from his cell as part of the Level VI restrictions."  Doc. 178 at 3.  Griffin had earlier moved for partial summary judgment on his constitutional due-process claim. The Defendants submitted the *Martinez*

report, and Griffin attached to his supplemental response renewing his motion for partial summary judgment the "witness statement" signed by Janine Rodriguez in which she states that she was standing outside of Griffin's cell when she "saw [him] throw his television set against his locked cell door" in a fit of rage.  Doc. 95, Ex. 2.  Griffin did not rebut that statement with an affidavit or any other evidence - and the Court therefore interpreted the fact that Griffin also attached the witness statement to his summary-judgment filings as proof of  the undisputed fact that Griffin destroyed a state-issued television on July 6, 2001.

Griffin complains that the March 25, 2010 Opinion does not acknowledge several facts, including that the television was "spiked" and gave him a shock, which he could have used to support a defense of duress in a disciplinary hearing.  *See* Doc. 191 at 2-4.  These "facts," however, are irrelevant to the reason the Court granted summary judgment to the Defendants on the due-process claim.

Griffin also contends that nothing supports the Court's conclusion that Griffin was aware of a "you break it-you buy it policy" for reimbursing the prison for the destroyed television, yet he has always asserted that he refused to sign the inmate television set agreement form given to him that specifically states that, if an inmate damages a television set, he "must pay replacement costs in full."  *See* Doc. 52 at 1; Doc. 58, Ex. 4 at 5.  The finding that Griffin was aware of the policy before he destroyed the television is well supported in the record.

Griffin next argues that he could not be "sentenced to restitution for destroying property without finding that he first destroyed it" and that officials knew that he had not been convicted of a disciplinary offense.  Doc. 191 at 6-8.  These arguments are irrelevant because the basis of taking the money was not a "sentence" for restitution.  Griffin ignores the Court's  undisputed finding that "[t]he prison based its authority for taking the money on an 'inmate purchase order' dated June 6,

2001 that allegedly authorized the prison to take $225 from Griffin's account for 'destruction' or 'damage to tv.'  Doc. 58, Ex. 3 at 1."  Doc. 178 at 4.  Griffin next argues that it is clear that the inmate purchase order for the television was fraudulent because of the language in that order; that it was obviously fraudulently created after he destroyed the television; and, therefore, the prison could have given him a pre-deprivation hearing before taking the money from his account.  *See* Doc. 191 at 8.  This argument ignores the Court's holding that, if the purchase order was fraudulent, it was "the sort of unauthorized or random actions governed by *Hudson v. Palmer*," which holds "that such a deprivation of property is not a due process violation if there is a meaningful post-deprivation remedy available."  Doc. 178 at 8 (internal quotation marks omitted).

And the Court disagrees that Griffin had no meaningful post-deprivation hearing available to him; he had an opportunity to call witnesses, to testify, and to cross-examine or challenge the prison's contention that he had destroyed the television set.  Griffin has submitted the summary of the 2006 post-deprivation hearing[4], and it is clear that he took the opportunity to challenge the allegedly fraudulent purchase order, although he did not seek to call Janine Vallejos as a witness.  *See* Doc. 191, Ex. 3 at 1-5.  The hearing officer did not make a finding regarding whether the purchase order was fraudulent, but she upheld the decision to take the money from Griffin's account because she concluded that he had destroyed the television set.  *See id.* at 5.  Griffin has provided

---

[4]  The Court based its finding that Griffin refused the hearing because the document Griffin submitted and *had refused to sign* provided that, if Griffin wanted a hearing, he had to sign his name on the form, and if he failed to sign, the warden would assume he did not want a hearing.  *See* Doc. 178 at 5 (citing Doc. 96, Ex. 1 at 2).  The new documents Griffin submits with his objections indicate that the warden in fact gave Griffin a hearing despite his refusal to sign the document.  At the hearing, Griffin insisted that it was an improper disciplinary hearing on a charge that had been dismissed and not appealed.  He never attempted to justify destroying the television because it was allegedly "spiked" and had shocked him because doing so would have required him to admit he destroyed it, and he refused to admit that at the hearing.

no cogent reason why the Court should vacate the order granting summary judgment in favor of the Defendants on the due-process claim.

Further, the Court takes judicial notice that the Tenth Circuit has recently issued an opinion holding, for the first time, that *Gillihan v. Shillinger,* 872 F.2d 935, 939-40 (10th Cir. 1989) (per curiam), on which the Court relied in conducting its due-process analysis with the presumption that Griffin had a protected property interest in his prison account, has been overruled.  *See Clark v. Wilson*,  625 F.3d 686, 691 (10th Cir. 2010) ("Because it is based on the 'legitimate expectations' methodology expressly abrogated by *Sandin, Gillihan's* holding that prisoners have a protected property interest in the funds in their prison trust accounts is no longer good law and, hence, not 'clearly established' in this circuit.").  Thus it appears that, even if *Hudson* did not apply and Griffin could somehow show that he was entitled to a pre-deprivation hearing before the money was taken from his account, the officers still would be entitled to qualified immunity because it was not clearly established in 2001.

### B.  The First-Amendment claim.

In the March 25, 2010 Order, the Court held as a matter of law that the "prison's restriction on Griffin's personal reading materials is content neutral" and that

> temporarily restricting Griffin's right to receive personal subscriptions, conditioned on Griffin's behavior, and while allowing him to obtain books and other reading materials from the prison's library, is rationally related to a legitimate penological interest.

Doc. 178 at 11-12.  The Court gave Griffin an opportunity to object to the dismissal of his First-Amendment claim.  In his motion to vacate, Griffin contends that the Court misinterpreted the way the BPC policy functions and that the *real* way it functions (as he interprets the policy) serves no legitimate penological interest.  The Court disagrees with Griffin's interpretation of the policy.

Griffin has failed to show that he has stated a cognizable claim for the violation of his First-Amendment rights, and the Court will dismiss Count One of his Amended Complaint. Plaintiff's request to file both volumes of his deposition into the record is **denied**

**IT IS THEREFORE HEREBY ORDERED** that Plaintiff's Eighth Objections [Doc. 190] and Ninth Objections [Doc. 191] are **DENIED** and that his motion to vacate the March 25, 2010 Order [Doc. 191] is **DENIED.**

**IT IS FURTHER ORDERED** that Count One of Plaintiff's Complaint is **DISMISSED** with prejudice.

**SO ORDERED** this 24TH day of March, 2011, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE